UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-60405-CIV-SINGHAL

LICIER JOEL VELASQUEZ ROMERO,

     Petitioner,

v.

BROWARD TRANSITIONAL CENTER, Warden, *et al.* ,

     Respondents.

_____/

## **ORDER**

Petitioner is a Honduran national who entered the United States on March 4, 2019. (DE [1] ¶ 38).  Department of Homeland Security ("DHS") inspected Petitioner, placed him in removal proceedings, (DE [1-4]), and paroled him into the country.  (DE [1-3]).  On November 6, 2025, when Petitioner arrived at the Immigration and Customs Enforcement ("ICE") office in Miramar, Florida for his annual check-in, ICE officials detained him.  (DE [9-1]).  DHS then issued a warrant to arrest Petitioner under 8 U.S.C. § 1226.  (DE [9-5]).[1]  Petitioner has been detained ever since.  (DE [9-3]).  Petitioner has not sought custody redetermination of his most recent detention.  (DE [9-4] ¶ 17).[2]  Petitioner filed the present Petition for Writ of Habeas Corpus, (DE [1]), the government responded, (DE [9]), and this Court held a hearing, (DE [11].  The Petition (DE [1]) is ripe for the Court's review.  Despite the excellent arguments that Petitioner's counsel raised at the hearing,

---

[1] The parties did not address whether the government—having expressly detained Petitioner pursuant to section 1226—could lawfully adjust course and travel under section 1225 to Petitioner's detriment, nor does this Court do so *sua sponte.*

[2] The government argues that Petitioner has not exhausted his remedies because he has not requested a custody redetermination (bond hearing).  For purposes of this Petition, the Court will excuse his failure to do so on grounds of futility, considering that Petitioner states "[p]ursuant to Matter of Yajure Hurtado, the Immigration Judge is unable to consider Petitioner's bond request." (DE [1] ¶ 43).

the Court determines that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2). The Petition (DE [1]) is denied.

## I.     LEGAL STANDARD

District courts have authority to grant writs of habeas corpus.  28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention."  *Munaf v. Geren,* 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).  The court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis,* 533 U.S. 678, 687 (2001).

## II.     DISCUSSION

Petitioner claims that he has been unlawfully detained without bond, and that he should be released under 8 U.S.C. § 1226.  This Court has previously explained that aliens present in the United States without admission are "applicants for admission" under 8 U.S.C. § 1225 and are therefore subject to mandatory detention under § 1225.  *See, e.g.*, *Morales v. Noem*, — F. Supp. 3d —, 2026 WL 236307, at *8 (S.D. Fla. Jan. 29, 2026); *Banchi v. Diaz*, No. 0:25-cv-62341 (S.D. Fla. Feb. 2, 2026); *Doria v. Warden, Broward Transitional Center*, No. 0:26-cv-60112 (S.D. Fla. Feb. 9, 2026).  Multiple courts of appeals have done the same.  *See Buenrostro-Mendez v. Bondi*, — F.4th —, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026); *Avila v. Bondi*, — F.4th —, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026).  And other district courts have also reached the same conclusion. *See, e.g.*, *Lopez v. Dir. of Enf't & Removal Operations*, — F. Supp. 3d —, 2026 WL 261938, at *7 (M.D. Fla. Jan. 26, 2026); *Weng v. Genalo*, 2026 WL 194248, at *3 (S.D.N.Y. Jan. 25, 2026).  This case is no different.  Petitioner was paroled into the country but was not admitted, and was therefore an applicant for admission.  (DE [1] ¶

2

45).  *See* 8 U.S.C. § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission of the alien.").

The Court has stressed that this issue comes down to enforcement, not interpretation.  For 28 years, § 1225 was not enforced against all applicants for admission, and now it is.  At the hearing, Petitioner responded that due to the long-held understanding that immigrants like Petitioner who were detained within the country, rather than at the border, were entitled to bond under § 1226, there was no reason for Congress to change the text of the INA to make such immigrants eligible for bond.

But that is an argument better made to Congress, not the courts.  The Court must interpret the text that Congress has written.  Section 1225 allows DHS to detain applicants for admission—aliens who are not admitted—without any specification on where in the country the aliens are detained.  And § 1225 has actually always been understood to apply to applicants for admission—DHS has just chosen not to enforce it.  In 1997, in an explanation of an interim rule, DHS described how § 1225 and § 1226 were to be enforced.  *See Executive Office for Immigration Review: Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum*, 62 Fed. Reg. 10312, 10333 (Mar. 6, 1997).  There the agency stated that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."  *Id.*  DHS recognized that non-admitted aliens were not entitled to bond under § 1225, but chose to grant them bond anyway under § 1226.

DHS was totally within its right to do so then, and is equally right to enforce § 1225 now.  Section 1226 applies to all aliens, which includes applicants for admission.  But

3

applicants for admission are also governed by § 1225.  DHS could choose to issue warrants and grant bond under § 1226 or to detain them under § 1225.  For 28 years, DHS chose to grant bond to applicants for admission.  But then in 2025, DHS chose to detain applicants for admission under § 1225 and not offer bond.  Both are appropriate executive decisions.  To the extent that the public does not want DHS to have this type of enforcement discretion, that is a problem for Congress to fix, not the Courts.  Congress cannot give DHS this level of discretion and then leave the courts holding the bag when the public takes issue.

Petitioner's due process arguments are similarly of no avail.  *See, e.g.*, *Arroyo v. Diaz*, -- F. Supp. --, 2026 WL 279656, at *6 (S.D. Fla. Feb. 2, 2026); *Morales*, 2026 WL 236307, at *9.  The "[Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Demore v. Kim*, 538 U.S. 510, 523 (2003).  "[A]liens are not entitled to a bond hearing while they pursue withholding of removal."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021).  Because the Supreme Court has upheld the constitutionality and lawfulness of detention without bond, Petitioner's due process rights have not been violated.

III.     CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2).  Petitioner is not entitled to release or a bond hearing pending removal.  Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Petition (DE [1]) is **DENIED**.  The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 16th day of April 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF